IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ROBERT J. RAY, SR.                                                                         PLAINTIFF

v.                                              CIVIL ACTION NO. 4:11-cv-133-CWR-LRA

THE GEO GROUP, INC., et al.                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants' motion for summary judgment, Docket No. 63, presenting an unusually straightforward question: When an employee threatens to kill a co-worker, is the employer justified in firing that employee? The answer is 'Yes!' Defendants' motion, therefore, is GRANTED.

## I. Factual and Procedural History

This case arises from The GEO Group, Inc.'s ("GEO") decision to terminate Robert J. Ray, Sr.'s ("Ray") employment, and events leading to that decision, after the company learned that Ray threatened "to try to kill" one of his co-workers in violation of company policy. Ray, an African-American man who worked as a Substance Abuse Counselor at GEO's East Mississippi Correctional Facility, admits to making the threat, but contends that his termination was both discriminatory and retaliatory, and that several GEO employees (the individually named defendants) conspired to have him discharged under false pretenses. Ray seeks damages through the following causes of action: (1) retaliation under the Fair Labor Standards Act ("FLSA"), (2) racial discrimination under Title VII, (3) 42 U.S.C. § 1983, (4) 42 U.S.C. § 1985(3), (5) defamation, (6) intentional infliction of emotional distress, and (7) false imprisonment.

On August 16, 2010, another GEO employee witnessed Ray allowing an inmate to use his workplace computer in violation of GEO policy. The employee reported the violation, leading GEO to "lock" Ray's computer the following day. Ray, in turn, confronted the employee

who reported him. At the end of the encounter, Ray told the reporting co-worker, "I am going to kill you." GEO investigated the incident and placed Ray on unpaid administrative leave. Four of the defendants were witnesses, and were interviewed by GEO's investigator, William Morgan.

On September 1, 2010, GEO's disciplinary committee held a hearing. Ray attended the hearing, and the committee heard from him. The committee recommended termination of Ray's employment for "unbecoming conduct," and GEO's warden carried out that recommendation on September 13, 2010, after receiving permission from GEO's regional human resources director. Ray appealed the decision internally; it was affirmed.

Criminal charges were later filed against Ray in state court, based on this incident. Upon learning of the charges Ray turned himself over to state authorities, who detained him for 45 minutes before he was released. Ray was later convicted of simple assault. Ray has appealed the conviction, and that appeal was still pending at the time that Ray filed his Amended Complaint. Docket No. 34, at ¶ 14.

Ray filed this lawsuit on August 16, 2011. Ray claims that he was actually discharged for raising successful wage and hour complaints against GEO in early 2007 and in January 2008, s*ee id.* at ¶¶ 6(A)–(M). Ray alleges that several negative events relating to his employment at GEO were retaliatory measures, including these allegations: that he was "forced to resign" from his duties as the prison's volunteer choir director in July 2008, *id.* at ¶ 6(O)–(Q); that, in March 2009, he was subjected to a disciplinary notice, which was later dismissed, *id.* at ¶ 6(R); that he was denied handicap parking in September 2009, and had to contact a "federal disability agency" to have it restored, *id.* at ¶ 6(S); that, in October 2009, GEO erroneously placed the arrest record of another individual in his employment file, "despite the proof that [it] was false," *id.* at ¶ 6(T); and that his son was "threatened with being charged with the felony of prison contraband and

forced to sign a resignation," *id.* at ¶ 6(N). Against this background, Ray alleges that his September 2010 termination was part of GEO's concerted effort to retaliate against him for successfully raising wage and hour complaints.

Ray also claims that his discharge was racially discriminatory because GEO disciplined its white employees more leniently than their black co-workers. This claim is based on a charge of discrimination, filed with the EEOC on November 1, 2010, alleging that two other white employees also violated GEO policy, but were never disciplined. Specifically, Ray claims that another substance abuse counselor, who is white, also allowed inmates to use his workplace computer and was never disciplined. *Id.* at ¶ 7; *see also* Docket No. 68-6; Docket No. 68-7, at 27, 34. Ray also claims that the white deputy warden verbally assaulted a co-worker but was never subjected to discipline or a disciplinary hearing. Docket No. 34. The results of the EEOC's investigation were inconclusive; it issued Ray a notice of suit rights on September 12, 2011. Docket No. 34-1.

Finally, Ray has brought claims against GEO and the several individual defendants, alleging that they violated his constitutional rights and otherwise caused him to suffer damages by pressing charges and providing testimony supporting Ray's prosecution for simple assault. Docket No. 34, at ¶¶ 9-13.

GEO and the other defendants have moved for summary judgment on all of Ray's claims. The motion has been fully briefed and is ripe for review. This Court possesses jurisdiction over all claims, and grants the motion for the reasons stated below.

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III. Law and Analysis

**A. FLSA Retaliation**

The anti-retaliation provision of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C.A. § 215 (West 2012). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011). Either a written or an oral complaint will suffice. *Id.* Depending on the circumstances, an

informal complaint can constitute protected activity. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008).

The Fifth Circuit provides that FLSA retaliation claims should proceed in the following manner: First, the plaintiff must make "a prima facie showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Id.* at 624. If the plaintiff satisfies this burden, "defendant must then articulate a legitimate, non-discriminatory reason for its decision." *Id.* If the defendant does so, "the burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination." *Id.* Ultimately, plaintiff must prove that the adverse employment action would not have occurred "but for" plaintiff's protected activity. *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 580 (5th Cir. 2004).

The parties do not dispute that Ray engaged in protected activity. It is also undisputed that Ray's termination was a materially adverse employment action. Therefore, Ray must demonstrate a causal connection between his participation in protected activity and the adverse employment action. The Court, having thoroughly reviewed the evidence presented, finds that Ray has failed to meet his burden of production regarding this element of his FLSA retaliation claim.

"[T]he existence of a causal link between protected activity and an adverse employment action is a highly fact specific and difficult question." *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010). Multiple factors are relevant to determining whether causation exists, including: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Id.* (citations and quotation marks omitted).

The temporal proximity between protected activity and an adverse employment action can provide a causal link if the two events are "very close." *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011).

GEO argues that there is no causal link because two and a half years passed between Ray's most recent FLSA complaint and his ultimate discharge. Docket No. 64, at 6-7. This argument is based on its understanding that Ray has argued causation by relying solely on the temporal proximity between his FLSA complaints and his termination to prove causation. *Id.*

Ray's claim, however, is based on more than temporal proximity alone. Ray asserts that causation is evidenced by the entire course of GEO's "efforts to blemish [his employment record] and eventually fire him." Docket No. 71, at 19.

Thus, it would be circumspect for the Court to dismiss his retaliation theory based solely on the lack of proximity, as GEO suggests. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442-43 (5th Cir. 2007) ("[C]onclusions drawn from a lack of suspicious timing are less compelling than those drawn from the existence of suspicious timing."). Instead, proximity should be considered, alongside the other factors that are relevant to causation analysis.

Therefore, the Court assesses whether Ray has presented sufficient evidence of causation under all the circumstances. Ray argues that a causal link should be inferred from any of the several allegedly retaliatory acts occurring between his complaints of FLSA violations and his ultimate termination. Yet, parsing Ray's response and his supporting memorandum, the Court finds that Ray has failed to present evidence supporting his allegations apart from his own conclusory and self-serving affidavit. In so doing, Ray "attempt[s] to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition

testimony." *Callahan v. Gulf Logistics, L.L.C.*, 456 F. App'x 385, 392 (5th Cir. 2011). Therefore, the affidavit cannot be relied upon to defeat summary judgment. *Id.*; *see also Barlow v. Allstate Texas Lloyds*, 214 F. App'x 435, 437 (5th Cir. 2007) ("Self serving assertions contradicting previous testimony are insufficient evidence to overcome a summary judgment motion."); *Bartucci v. Jackson,* No. 04–2977, 2006 WL 2631925, *5 (E.D. La. Sept. 13, 2006) ("while many courts have accepted a plaintiff's own affidavit, deposition, or verified pleadings to defeat summary judgment, a number of courts have rejected this proof when the plaintiff's statements are self-serving and conclusory") (collecting cases).

Further, even if Ray's allegations were supported, they are immaterial in light of the undisputed facts showing that: (1) Ray made a statement where he threatened to kill one of his co-workers; (2) the incident was immediately reported and investigated by Ray's employer; (3) shortly after the incident was reported and investigated, Ray was provided with a disciplinary hearing; (4) after hearing from Ray and the evidence presented, the disciplinary committee recommended that Ray be terminated for his conduct; and (5) based on this recommendation, GEO terminated Ray's employment less than a month after the incident was first reported and investigated.

Accordingly, Ray's employment was only placed in jeopardy after he threatened the life of one of his colleagues. GEO was entitled to treat this threat seriously. Any conceivable connection between Ray's participation in protected activity and his termination is simply too attenuated for a reasonable factfinder to infer that Ray was terminated because of retaliatory animus. For sure, Ray has not demonstrated that but for engaging in the protected activity of raising successful wage and hour complaints in 2007 and 2008, his employment would not have been terminated in light of his misconduct.

Because Ray has failed to present evidence supporting causation, which is an essential element of his prima facie case, summary judgment on this claim shall be entered for the defendants.

**B. Title VII Race Discrimination**

Ray also claims that he would not have been discharged if he were white and, therefore, his discharge was pretext for race discrimination. To establish his individual disparate treatment claim, Ray "must show that [white] employees were treated differently under circumstances *nearly identical* to his." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005) (citations and quotation marks omitted) (emphasis added). The Fifth Circuit has explained:

> We require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citations omitted); *see also Luna v. Corr. Corp. of Am.*, 469 F. App'x 301, 304 (5th Cir. 2012) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.") (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Ray's claim is based on two incidents. First, Ray alleges that he was fired for letting an inmate use his workplace computer—an offense that had not led to the termination of a white

employee. Specifically, Ray alleges that another substance abuse counselor, a white man named David Vincent, also allowed inmates to use his workplace computer and was never disciplined. This claim is supported by an affidavit from Vincent himself, and documentary evidence submitted by Ray. Docket No. 68-6; Docket No. 68-7, at 27, 34. Second, Ray alleges that Deputy Warden Bart Grimes, who is white, also engaged in a verbal altercation with a co-worker; and that two GEO employees, Warden Alton Caskey and Human Resources Director Dorothy Pope, were made aware of the incident but nevertheless failed to discipline Grimes or to subject him to any disciplinary hearing. *See* Docket No. 68-7, at 2.

Neither of these incidents presents "nearly identical" circumstances. Ray has pointed to no similarly situated individuals or incidents—in other words, no one else has threatened to kill a co-worker. *See King v. W. W. Grainger, Inc.*, No. 2:11-cv-16, 2012 WL 777319 (N.D. Miss.), *aff'd*, No. 12-60265, 2012 WL 5398364 (5th Cir. Nov. 6, 2012). The incident involving David Vincent, even if proven, bears no similarity to the circumstances that led Ray to threaten the life of his co-worker. Likewise, although the altercation involving Grimes was alleged to have been highly confrontational and contentious, at no point was it ever alleged that Grimes threatened the life of another. Thus, Ray has also failed to establish that he and Grimes were similarly situated.

Because Ray has failed to establish an essential element of his discrimination claim, this claim is also due to be dismissed; summary judgment shall be entered for the defendants.

**C. Section 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citations omitted).

Assuming that he can satisfy the first prong of § 1983, Ray's claims still fail as a matter of law because he has failed to produce evidence that the defendants acted under color of state law. Ray alleges that four of the individual defendants acted under color of state law when they gave testimony that was used to support his assault conviction, which ultimately led to the denial of his unemployment benefits. Docket No. 71, at 22. Ray also alleges that GEO acted under color of state law because it failed "to bring to corporate review what he had suffered by the hands of [its] employees at the prison." *Id.* at 23. As explained below, neither of these allegations shows that the defendants acted under color of state law under Fifth Circuit precedent.

In *Cornish*, the issue was whether plaintiff's employer, a private correctional facility, acted "under color of state law" when it terminated plaintiff's employment with the company. The Fifth Circuit affirmed the district court's dismissal, holding that the private correctional facility did not act under color of state law when it made employment decisions, absent some showing that the state "exerted coercive power or provided significant encouragement for [the employer's] decision to terminate [plaintiff's] employment." *Id.* at 551.

Here, Ray has "failed to plead *any* facts alleging that the State encouraged, compelled, or was in any way involved in [his employer's] decision to terminate his employment." *Id.* (emphasis added). Likewise, he has not directed the Court to any facts suggesting that the individual defendants acted under color of state law. These defendants were not parties to any action against Ray. Moreover, Ray's unsupported assertions that the defendants perjured themselves indicate, at best, an abuse of process; therefore, they are insufficient to support his claims. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 942 (1982) (holding that a § 1983 claimant did not present a valid cause of action "insofar as he alleged only misuse or abuse" of state law).

Because Ray's claims fail as a matter of law, they should not proceed; the defendants are entitled to summary judgment.

**D. Section 1985(3) Claims**

> To state a claim under section 1985(3), a complaint must allege: (1) a conspiracy of two or more person[s]; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Essential to the claim, however, is that the conspiracy be motivated by racial animus.

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) (citations omitted).

GEO argues that Ray's claim should fail because he cannot show that defendants conspired to deprive him of his rights based on his race. Ray responds that racial animus manifested through the disparate treatment of black and white workers, but the only evidence that Ray offers in support of this allegation is his own affidavit, which the Court has already deemed improper. Because these claims are otherwise unsupported, there are no genuine disputes of fact. Therefore, Ray has not shown that he is entitled to relief; summary judgment is appropriate on these claims.

**E. State Law Claims**

<u>1. Defamation and Intentional Infliction of Emotional Distress</u>

> [D]amages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. Only in the most unusual cases does the conduct move out of the "realm of an ordinary employment dispute" into the classification of "extreme and outrageous," as required for the tort of intentional infliction of emotional distress.

*Brown v. Inter-City Fed. Bank for Savings*, 738 So. 2d 262, 265 (Miss. Ct. App. 1999) (citations omitted); *see also Davis v. River Region Health Sys.*, - - - F. Supp. 2d - - -, No. 5:11-cv-132,

2012 WL 4857823 (S.D. Miss. Oct. 12, 2012). Moreover, "statements made in connection with judicial proceedings, including pleadings, are, if in any way relevant to the subject matter of the action, absolutely privileged and immune from attack as defamation, even if such statements are made maliciously and with knowledge of their falsehood." *Cent. Healthcare Services, P.A. v. Citizens Bank of Philadelphia*, 12 So. 3d 1159, 1168 (Miss. Ct. App. 2009); *see also Oliver v. Skinner*, No. 4:09-cv-29, 2013 WL 667664, *7 n.10 (S.D. Miss. Feb. 22, 2013).

Ray has not met either standard. His defamation and intentional infliction of emotional distress claims are entirely based on his unsupported assertions that defendants perjured themselves at his termination hearing. Docket No. 71, at 24-25. He has no other evidence supporting either claim. Accordingly, summary judgment shall be entered for the defendants.

2. False Imprisonment

"There are two elements that a plaintiff must prove in order to succeed on a false imprisonment claim: (1) the detention of the plaintiff; and (2) the unlawfulness of such detention." *Smith v. Magnolia Lady, Inc.*, 925 So. 2d 898, 904 (Miss. Ct. App. 2006) (citations and quotation marks omitted). Ray has made no attempt to show that he was detained by the defendants. Accordingly, summary judgment on this claim is also appropriate.

**IV. Conclusion**

For these reasons, the defendants' motion is GRANTED. Final judgment dismissing Ray's claims, with prejudice, shall follow.

**SO ORDERED**, this the 7th day of March, 2013.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE